**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**WESTERN DIVISION**

**GREGORY ADAMS**                                                        **PLAINTIFF**

**V.**                              **CASE NO.: 4:15-CV-565-BD**

**CAROLYN W. COLVIN, Acting Commissioner,**
**Social Security Administration**                                      **DEFENDANT**

## ORDER AFFIRMING COMMISSIONER

Plaintiff Gregory Adams has appealed the final decision of the Commissioner of

the Social Security Administration denying his claim for supplemental security income.

Both parties have submitted appeal briefs and the case is ready for decision.[1]

**Background**

Mr. Adams alleged that he became limited in his ability to work due to depression,

human immunodeficiency virus ("HIV"), and lack of sleep.  (SSA record at 150)  After

conducting a hearing, the Administrative Law Judge[2] ("ALJ") concluded that Mr. Adams

had not been under a disability within the meaning of the Social Security Act at any time

from March 23, 2012, through February 27, 2014, the date of his decision.  (*Id*. at 27)  On

July 7, 2015, the Appeals Council denied the request for a review of the ALJ's decision,

---

[1]The parties have consented to the jurisdiction of the Magistrate Judge.  (Docket #5)

[2]The Honorable Mark Schafer.

making the ALJ's decision the final decision of the Commissioner.  (*Id*. at 3-6)  Mr. Adams then filed his complaint initiating this appeal.  (Docket #3)

Mr. Adams was 48 years old at the time of the hearing and lived with a friend. (SSA record at 36, 40)  He had a twelfth-grade education but did not graduate from high school.  (*Id*. at 52)  He had past relevant work as a salvage worker and line cook and last worked in 2011 as a cashier.  (*Id*. at 36-38, 142)

**The ALJ's Decision**

The ALJ found that Mr. Adams had not engaged in substantial gainful activity since his alleged onset date and that his HIV; adjustment disorder with mixed anxiety and depressed mood; and history of cocaine and alcohol abuse were severe impairments.  (*Id*. at 15)  He further found that Mr. Adams's  allegations regarding the intensity, persistence, and limiting effects of his symptoms were not entirely credible.  (*Id*. at 17-23)

Based on his findings, the ALJ concluded that, during the relevant time period, Mr. Adams retained the residual functional capacity ("RFC") for sedentary work, except he could only occasionally stoop, crouch, kneel, bend and crawl; was restricted to an indoor environment without temperature extremes; and could only perform work that was simple, routine, and repetitive with supervision that was simple, direct and concrete.  (*Id*. at 17-25)

After hearing testimony from a vocational expert, the ALJ determined that Mr. Adams could not perform his past relevant work, but that he could perform work as a

2

lamp shade assembler and document preparer.  (*Id*. at 26)  Thus, the ALJ concluded, Mr.

Adams was not disabled.  (*Id*. at 27)

**Mr. Adams's Allegations**

Mr. Adams generally challenges the ALJ's decision, but focuses on the weight

given to the opinions of his treating physicians and the assessment of his RFC.  (#3)  He

argues the medical evidence supports more limitation than the ALJ found.  For these

reasons, he says, substantial evidence does not support the decision.

**Standard on Review**

The Court's function on review is to determine whether the Commissioner's

decision is supported by substantial evidence on the record as a whole and free of legal

error.  *Papesh v. Colvin*, 786 F.3d 1126, 1131(8th Cir. 2015); see also 42 U.S.C.

§§ 405(g).  Substantial evidence is such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401

(1971); *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012).

**Opinion Evidence**

A treating physician's opinion should be granted controlling weight if it is well

supported by medically acceptable clinical and laboratory diagnostic techniques and is not

inconsistent with the other substantial evidence in the record.  *Miller v. Colvin*, 784 F.3d

472, 477 (8th Cir. 2015).  The opinion of a treating physician, however, does not

automatically control or eliminate the need to evaluate the record as a whole.  *Id*. (quoting

*Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001)).  An ALJ may discount or disregard the opinion of a treating physician when other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of the opinions.  *Id*. (citations omitted).  Further, a medical source opinion that an applicant is disabled or unable to work involves an issue reserved for the Commissioner and, therefore, is not given controlling weight.  *Ellis v. Barnhart*, 392 F.3d 988, 994-95 (8th Cir. 2005) (citations omitted).

Here, the ALJ discounted Dr. Estelita Quimosing's opinion that Mr. Adams could not perform sedentary work because it was inconsistent with other substantial evidence in the record.  (SSA record at 24)  The ALJ observed that Dr. Quimosing's responses on the Immunodeficiency Virus Infection Medical Assessment Form were not supported by her own treatment notes.  Dr. Quimosing responded to the questionnaire that Mr. Adams would have marked difficulties in completing tasks in a timely manner and frequently experienced symptoms that interfered with his ability to perform simple work-like tasks.

Dr. Quimosing, an internist, performed a depression screening of Mr. Adams during a follow-up visit the month prior to completing the questionnaire and found that Mr. Adams was severely depressed.  Upon screening on the date she completed the questionnaire, however, she noted that Mr. Adams was negative for depression.[3]  (*Id*. at

---

[3]A depression screen of Mr. Adams on May 2, 2012 was also negative.  (*Id*. at 262)

350, 355, 358)  The inconsistency between the questionnaire (reporting marked difficulties) and the treatment notes (reporting no depression symptoms) was a good reason for the ALJ to discount Dr. Quimosing's opinion.  *Perkins v. Astrue*, 648 F.3d 892, 899 (8th Cir. 2011) (ALJ may discount the opinion of a treating physician that is inconsistent with the physician's treatment notes).

Further, as the ALJ noted, Dr. Quimosing's questionnaire responses conflicted with the opinion of John Faucett, Ph.D., who performed a consultative mental examination of Mr. Adams and concluded that, although Mr. Adams was performing at a borderline range intellectually, he had the cognitive capacity to perform basic work-like tasks as well as the ability to attend and sustain concentration and persistence.  (*Id.*)

The ALJ also observed that, at the hearing, Mr. Adams testified that Dr. Quimosing had completed the questionnaire based on his responses to the questions.  (*Id.* at 51)  Dr.Quimosing's reliance on Mr. Adams's subjective complaints was another valid reason for discounting her opinion.  *McDade v. Astrue*, 720 F.3d 994, 999–1000 (8th Cir. 2013) (physician's opinion was properly discounted when he appeared to rely on claimant's subjective reports of symptoms and limitations).

Additionally, the Court recognizes that Dr. Quimosing had only treated Mr. Adams for HIV and Chlamydia on two occasions prior to completing the questionnaire opining that his mental impairments would limit his ability to perform work-like tasks. The ALJ was justified in discounting Dr. Quimosing's opinion on this ground as well.

See *Randolph v. Barnhart*, 386 F.3d 835, 840 (8th Cir. 2004)(discounting opinion of physician who had met with patient on only three occasions when she filled out checklist); see also 20 C.F.R. §§ 404.1527(c)(2)(i), 416.927(c)(2)(ii)(the longer a treating source has treated a claimant and the more times the claimant has been seen by a treating source, the more weight to be given to the source's medical opinion).

The ALJ also discounted the opinion of Samuel Bayles, M.D., who completed a mental residual functional capacity questionnaire for Mr. Adams concluding that, because of his low intellectual functioning and mental illness, he was unlikely to maintain consistent employment.  (*Id.* at 386-87)  The ALJ observed that there were inconsistencies between Dr. Bayles's opinion and the record concerning Mr. Adams's alleged hallucinations and also in his improvement with medication.

The ALJ notes that Dr. Bayles's opinion is contradicted by Mr. Adams's failure to report any hallucinations to Dr. Faucett during his consulting evaluation.  (*Id.* at 46, 274-79)  Additionally, in treatment notes from April 2013, Mr. Adams reported that he was "doing much better" and that his medication was working well.  (*Id.* at 53, 395)  He denied hallucinations, delusions, paranoia, or psychosis and also feelings of hopelessness or worthlessness.  (*Id.*)  In October, 2013, he reported that adding a new medication had been very helpful, that he was less irritable, had improved sleep, and was having "good days" more than 50% of the time.  (*Id.* at 405)  He also denied auditory hallucinations, but did hear sounds or voices on rare occasions and was still seeing things out of the corner of

6

his eye.  He admitted, however, this might have been his mind playing tricks on him.

(*Id*.)  An ALJ may consider a stabilization in symptoms when discounting a treating

physician's opinion.  *Bernard v. Colvin*, 774 F.3d 482, 488 (8th Cir. 2014) (citing *Brown*

*v. Barnhart*, 390 F.3d 535, 540 (8th Cir.2004) (other citation omitted).

Notably, Dr. Bayles's treatment of Mr. Adams was limited to three visits over the

eight months prior to completing the questionnaire.  (*Id*. at 389-98)  See *Randolph v.*

*Barnhart*, 386 F.3d 835, 840 (8th Cir. 2004)(discounting opinion of physician who had

met with patient on only three occasions when he filled out checklist); see also 20 C.F.R.

§ 416.927(c)(2)(ii) (the longer a treating source has treated a claimant and the more times

the claimant has been seen by a treating source, the more weight to be given to the

source's medical opinion).

Finally, the ALJ commented that Dr. Bayles had not performed any testing to

determine Mr. Adams's intellectual functioning.  (*Id*. at 25)  Dr. Faucett, who performed

a mental status evaluation, determined that Mr. Adams had the cognitive capacity to

perform basic work-like tasks.  (*Id*. at 274-49)  The ALJ did not err in discounting Dr.

Bayles's opinion.

**Residual Functional Capacity**

Mr. Adams complains that there is insufficient evidence to support the ALJ's

conclusion that he could perform a limited range of sedentary work.  (#13 at pp. 17-20)

Sedentary work involves "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. § 416.967. Additionally, the ALJ included further restrictions for Mr. Adams, including limits on stooping, crouching, kneeling, bending, crawling, and temperature extremes. He also included limits to simple, routine, and repetitive work where supervision is simple, direct, and concrete. (SSA record at 17)

A reasonable mind would accept the evidence as adequate, because medical evidence established no disabling physical symptoms. A claimant must prove disability with medical evidence; allegations are not enough. See 42 U.S.C. § 423 (d)(5)(A), 20 C.F.R. § 416.908. Mr. Adams provided medical evidence that showed a diagnosis of HIV. Mr. Adams had low CD4 levels in August, 2011, but his condition improved on medication. (*Id*. at 248-264, 350-80) Since that time, he had been seeing a physician regularly and taking his medication and had mostly normal physical examinations and frequently reported no pain. (*Id*. at 351, 353, 355-56, 358, 363-64, 365-66, 390, 392, 395, 397, 400, 405)

Mr. Adams had some complaints that his medication caused diarrhea, but he did not report medication side effects in his pain questionnaire or at many visits to treatment providers. (*Id*. at 176, 258, 260, 320, 322-23, 355, 358, 363, 365, 390-91, 393-94, 396, 399, 404) This evidence established no disabling symptoms from HIV.

According to agency medical experts, Mr. Adams could perform light work involving occasional postural functions.  (*Id*. at 285-306, 329, 334)  Additionally, Chrystal Johnson, M.D., performed a consultative examination of Mr. Adams and noted mostly normal findings except for some tenderness to palpation.  (*Id*. at 268-72)  She concluded that Mr. Adams would have moderate to severe limitations; however, claims of severe limitations due to pain were inconsistent with the reports of Mr. Adams's treatment providers who repeatedly noted normal physical examinations and no reports of pain.  (*Id*. at 351, 353, 355-56, 358, 363-64, 365-66, 390, 392, 395, 397, 400, 405)

The limitations the ALJ included demonstrate that he considered Mr. Adams's physical impairments.  "A claimant's RFC represents the most he can do despite the combined effects of all of his credible limitations…."  The limitation to sedentary work, the exclusion of frequent stooping, kneeling, bending, crouching, or crawling, and exposure to temperature extremes reflect a consideration of all of Mr. Adams's impairments.

As set forth above, medical evidence established no disabling mental symptoms. The ALJ's limitation to unskilled work — work involving incidental interpersonal contact, tasks with few variables learned and performed by rote, little independent judgment, no contact with general public, and simple, direct, concrete supervision — also reflects consideration of Mr. Adams's borderline intellectual functioning.

After determining that Mr. Adams could not perform his past relevant work, the ALJ questioned a vocational expert about available work for a person with Mr. Adams's limitations.  The vocational expert identified lamp shade assembler and document preparer as available unskilled, sedentary jobs.  (*Id*. at 62)  The availability of jobs showed that work existed that Mr. Adams could do.  The ALJ properly denied the application.

**Conclusion**

Substantial evidence supports the ALJ's decision denying Mr. Adams's application.  The ALJ made no legal error.  For these reasons, Mr. Adams's request for relief (#3) is DENIED, and the decision denying the application for benefits is AFFIRMED.

DATED this 14th day of September, 2016.

_____
UNITED STATES MAGISTRATE JUDGE